[No. 4348. Decided April 14, 1903.]

## J. P. LACAFF, *Respondent*, v. DUTCH MILLER MINING AND SMELTING COMPANY, *Appellant*.

APPEAL — SUPERSEDEAS BOND — STAYING COSTS.

Where the judgment was for costs, and also for other relief, a supersedeas bond which is in double the amount of the costs and $200 additional is sufficient to operate as a supersedeas upon the judgment for costs and as an appeal bond, and therefore give the supreme court jurisdiction, although not sufficient to operate as a supersedeas on other parts of the judgment.

TRANSFER OF STOCK — ACTION AGAINST CORPORATION — SUFFICIENCY OF COMPLAINT.

An action by an assignee of shares of stock, which had been subscribed for by his assignor, to compel the corporation to issue

them to plaintiff does not state a cause of action when it fails
to allege a transfer of the stock upon the books of the company
or facts showing the duty of the company to enter the transfer,
since it is provided in Bal. Code, § 4261, that such transfers shall
not be valid, except between the parties thereto, until the same
shall have been entered upon the books of the company.

Appeal from Superior Court, Kittitas County.—Hon.
FRANK H. RUDKIN, Judge.   Reversed.

*George D. Farwell,* for appellant.

*E. E. Wager* and *C. R. Hovey,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This action was brought in the lower court
by respondent against appellant to require appellant to
issue to respondent certificates for 166,666 shares of stock
of appellant corporation, and for other relief.   The sum-
mons and complaint were regularly served on the defend-
ant corporation on November 9, 1901.   The summons re-
quired defendant to appear within twenty days thereafter
and defend the action.   On the 29th day of November,
1901, which was the last day for defendant to appear and
defend the action, it served a demand upon plaintiff's at-
torneys, requiring them to furnish to defendant a certi-
fied copy of an assignment referred to in the complaint.
On the next day a copy of this demand was filed in the
clerk's office.   The plaintiff did not comply with this de-
mand, but on December 3, 1901, filed a motion for default
and judgment, and on the 6th served the motion for de-
fault and judgment upon defendant's attorneys.   There-
after, on the next day, December 7th, defendant filed a
demurrer to the complaint, and also a motion to dismiss
the motion for default.   Plaintiff's motion for default
came on regularly for hearing on January 2, 1902, both
plaintiff and defendant being present; and the court,

after hearing arguments of counsel, granted the motion, and entered judgment for default as prayed for in the complaint. Thereafter, on January 7, 1902, the defendant filed a motion, supported by affidavits, to vacate the judgment and default, and for leave to plead to the merits. This motion, upon a hearing, was denied on January 16, 1902, and an exception saved by defendant. On February 24, 1902, defendant filed another motion, denominated "An Amended and Supplemental Motion and Motion for Rehearing to Set Aside and Vacate Default and Judgment." This motion was supported by affidavits, and was heard by the court and denied on March 24, 1902. The defendant now appeals from the judgment by default, and the order denying the first motion to set aside the default and judgment, and from the order denying the last motion.

The respondent moves to dismiss this appeal because the bond on appeal is for $300, conditioned both as an appeal and as a supersedeas bond. The judgment is a money judgment for costs, and also a judgment for other relief. The court was not asked to fix, and did not fix, the amount of a bond to be given by appellant as a supersedeas of that part of the judgment which was for relief other than money. The bond given was for $300—$200 for an appeal bond, and $100 additional—being double the judgment for costs. This bond operated as a supersedeas upon the judgment for costs and as an appeal bond. It did not operate as a supersedeas upon the other parts of the judgment, and was not intended to do so. We think this bond was sufficient, under the statute, to give this court jurisdiction, and the motion is therefore denied.

The statement of facts upon the hearing of the motion for default, and upon the first motion to set aside the de-

fault and judgment, is not before us on this appeal, because the same was not filed in time. *State ex rel. Dutch Miller, etc., Co. v. Superior Court,* 30 Wash. 43 (70 Pac. 102). For this reason, there are but two questions for us to consider: (1) Does the complaint state facts sufficient to constitute a cause of action? (2) Did the court err in denying the last motion to set aside the default?

The complaint, after alleging the corporate character of the defendant, is as follows:

"(2) That on January 31, 1898, one Marcus Bertram subscribed for, and paid for in full, 333,333 1-3 shares of the capital stock of the said defendant; that no certificates for the said shares of stock were issued to the said Marcus Bertram. (3) That on February 8, 1898, the said Marcus Bertram, for value, duly sold, assigned, transferred, and set over, in writing, one-half of the aforesaid shares of stock to which he was entitled as aforesaid, unto the plaintiff herein, who is now the owner and entitled to the possession of the same. (4) That plaintiff has demanded of the defendant that it issue to him the certificates for the shares of stock in the defendant corporation to which he is entitled as aforesaid, but that the defendant fails and refuses so to do, and the defendant further refuses to recognize the plaintiff as one of its stockholders, and to permit the plaintiff to inspect the books of the defendant corporation. (5) That plaintiff is without any plain, speedy, or adequate remedy at law.

"Wherefore plaintiff prays the following: (1) That a decree be entered adjudging the plaintiff to be the owner and entitled to the immediate possession of 166,666 2-3 shares of the capital stock of the defendant corporation, and requiring the defendant to at once issue to the plaintiff a certificate for the said shares, and further requiring the defendant and its officers to permit the plaintiff to inspect the books of said corporation, and to fully recognize and acknowledge the plaintiff's rights as a stockholder in said corporation; (2) for judgment against the defendant for

his costs of suit; (3) and for such other and further relief as to the court may seem meet and equitable."

The complaint shows that Marcus Bertram subscribed and fully paid for 333,333 1-3 shares of the capital stock of the corporation. He was therefore a stockholder in the corporation, and entitled to a certificate for these shares, as prescribed by the by-laws of the company, which certificate was negotiable in the sense that it might be sold, and the interest of the owner of the shares transferred to another, upon compliance with certain conditions usually provided in the by-laws of the corporation. The complaint further shows that no certificate for the said shares was issued to the said Marcus Bertram. If Marcus Bertram was entitled to certificates after he had paid for the shares, and the company had refused to issue the same to him, the general rule, as stated by many decisions and text-writers, is that an action in equity may be maintained by a stockholder to compel the corporation to transfer or issue certificates of the stock of the corporation to the rightful owner. Mr. Cook, in his work on Stocks, etc. (3d ed.), at § 61, says:

"The corporation is bound, upon demand, to deliver to a stockholder a certificate of stock representing his interest in the corporation. If it refuses to issue the certificate, the stockholder may bring suit in equity to compel its issuance."

Under the head "Rights and Duties of the Corporation in Allowing or Refusing Registry," the same author, at § 389, says:

"Where, for any reason, the corporation refuses to allow the registry of a transfer of stock, when it is the duty and obligation of the corporation to allow it, the transferror or the transferee who applies for registry may, in general, pursue one of three remedies"—one of which is a suit

in equity to compel the corporation to register a transfer of the stock. It is also held that an injured person may resort to the legal or equitable remedy at his election. 20 Enc. Pl. & Pr. p. 814; *State ex rel. Bross v. Carpenter,* 51 Ohio St. 83 (37 N. E. 261, 46 Am. St. Rep. 556); *Withers v. Lafayette County Bank,* 67 Mo. App. 115; *Keller v. Eureka Brick Machine Mfg. Co.,* 43 Mo. App. 84 (11 L. R. A. 472); *Baker v. Wasson,* 59 Tex. 1  ·  See, also, *McAllister v. Kuhn,* 96 U. S. 87; *Payne v. Elliot,* 54 Cal. 339 (35 Am. Rep. 80). In *Huggins v. Milwaukee Brewing Co.,* 10 Wash. 579 (39 Pac. 152), in commenting upon the rule that an action will lie for a conversion where there is demand and refusal to transfer stock, this court, at page 582, said:

"Whether a rule giving to stockholders in a corporation such a privilege would have to be upheld in this state, we need not now decide. But granting that it is a rule so firmly established in the law that its enforcement could be justly required under our statutes governing corporations, we are strongly convinced that it is a harsh and dangerous rule, the application of which ought not to be extended beyond those cases where there is a clear legal right on the part of the assignee of stock certificates to have a transfer."

The section of the statute which the court had in mind when this statement was made is § 4261, Bal. Code, which is as follows:

"The stock of the company shall be deemed personal estate, and shall be transferable in such manner as shall be prescribed by the by-laws of the company; but no transfer shall be valid except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties, by and to whom transferred, the numbers and designation of the shares, and the date of the transfer."

This statute was, no doubt, intended to relieve a corporation from any liability whatever on account of the trans-

fer of any of its shares of stock until it had had notice of the transfer, and had entered the same upon the books of the company. It, in effect, declares that all transfers of stock of the corporation are invalid, as between the company and the transferee, until such transfer shall have been entered upon the books of the company. If the transfer is invalid as between such transferee and the company, the transferee certainly cannot enforce such transfer against the company. Until the transfer is entered upon the books of the company there is no privity of contract existing between the transferee and the corporation which can be enforced by one against the other. There can be no doubt that if Bertram had subscribed and fully paid for 333,333 1-3 shares of the capital stock of the company, and was the owner thereof and entitled to certificates therefor at the time he is alleged to have sold a part thereof, he could, by equitable assignment, transfer all his right to the whole or any part of the shares subject to all the rights of the corporation, of which the purchaser was bound to take notice. But before his transferees could compel the issuance of certificates for the stock, they must allege either an entry of the transfer upon the books of the company, or a duty of the company to make it. To show the latter, it is necessary to allege the rule prescribed in the by-laws of the company for the transfer of the stock, and a compliance with all the reasonable conditions thereof, and that the corporation had no rightful claim to the stock, or a lien thereon, so as to make clear the legal duty of the company to make the entry of the transfer upon the books of the company and to issue the certificate. Lowell, Transfer of Stock, § 89 *et seq.*; *Burrall v. Bushwick R. R. Co.,* 75 N. Y. 211; *Union Bank v. Laird,* 2 Wheat. 390. Until there was a transfer of the stock upon the books of the

company, or a duty to make it, the respondent, under the provisions of the statute above quoted, could claim no relief against the company for the issuance of certificates. There is no allegation of either in the complaint. For this reason the complaint fails to state a cause of action.

Under this view of the case, it is unnecessary to consider the other question.

The cause is reversed and remanded, with leave to respondent to amend his complaint within thirty days after the remittitur is filed below, if he so desires.

ANDERS and DUNBAR, JJ., concur.

FULLERTON, C. J., concurs in the result.